No. 13274

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE OF MONTANA ex rel.
DANIEL J. STCWE,

          Petitioner,

  -vs-

BOARD OF ADMINISTRATION OF THE PUBLIC
EMPLOYEES RETIREMENT DIVISION AND FRED
BARRETT, W.M. COCALES, FRED L. HILL,
JOHN L. PREBIL, and KEVIN J. SHANNON,
Members thereof,

          Respondents.

---

Appeal from:  District Court of the First Judicial District,
              Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

    For Petitioner:

        Hubert J. Massman argued and Joseph Massman appeared,
        Helena, Montana

    For Respondents:

        Stuart Kellner, Special Assistant Attorney, argued,
        Helena, Montana
        Michael J. Hughes, Helena, Montana

---

                    Submitted:  January 17, 1977

                    Decided:  MAY 11 1977

Filed:  MAY 11 1977

Thomas J. Kearney
                        Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Daniel Stowe, a member of the Montana Public Employees' Retirement System (PERS), appeals from a judgment of the district court, Lewis and Clark County, dismissing his petition for a writ of manda t e directed against the board of administration of PERS.

The district court held that Stowe had a remedy of judicial review under the Montana Administrative Procedure Act (MAPA) but lost it by not petitioning for review within the statutory 30 days. Although not required to do so in light of its ruling on the motion to dismiss, the district court also ruled on the merits of the claim. The court held that when an employee under PERS is readmitted to PERS for the purpose of obtaining disability benefits, the PERS board has the right to determine the date when the benefits shall commence. Stowe appeals from both rulings.

On October 25, 1972, Stowe fell down a flight of stairs in the course of his work as an employee of the city of Helena. His injuries rendered him totally and permanently disabled. After receiving credit for accrued vacation time and sick leave, Stowe's employment was terminated on November 13, 1972. On November 20, 1972, Stowe was given an application for a refund of his contributions to the PERS during his employment by the city of Helena. He was not told, and he did not know, he had a right to apply for a disability retirement allowance. Stowe signed the application for a refund of his PERS contributions and upon receiving his contributions of $889.77, he lost all membership benefits under PERS. Section 68-1603, R.C.M. 1947, of the Public Employees' Retirement Act provides:

"If any part of a member's accumulated normal contributions are refunded pursuant to section 68-1905, he ceases to be a member and all membership service to his credit is canceled. Any person who is retired ceases to be a member."

Section 68-1905, R.C.M. 1947, permits a refund of contributions, if a member's service is discontinued because of disability.

In February 1975, Stowe applied to the PERS board for reinstatement in the PERS and submitted a claim for disability retirement allowance. The PERS board approved Stowe's reinstatement and granted his disability claim on the condition that Stowe redeposit the amount of his PERS contributions withdrawn, together with accrued interest on this amount. Stowe deposited this money on March 28, 1975 and the PERS board determined his disability benefits would start from the date of deposit. Upon making his deposit however, Stowe simultaneously requested that benefit payments relate back to the date of the injury (October 25, 1972) and requested a hearing after he filed the necessary information and documentation.

In support of his claim in early April 1975, Stowe submitted to the PERS board a petition and several affidavits and again specifically requested an opportunity to appear before the PERS board should it have any questions relating to his claim. The PERS board at no time indicated it had any question or that it was disposed to act adversely to Stowe's petition for benefits from the date of injury. Under these circumstances one could conclude the PERS board had decided to act favorably on the petition, otherwise it would have given Stowe a hearing. Without granting a hearing (date) the PERS board met on May 9, 1975, and ruled against Stowe's petition. He was informed of its decision by letter dated May 27, 1975.

- 3 -

Stowe commenced action on July 17, 1975, for a writ of mandamus to compel the PERS board to start payment of disability payments from the date of injury.

First we consider whether the PERS board had discretion to start Stowe's disability retirement allowance on March 28, 1975, the date of his reinstatement as a member of the PERS. Section 68-2102, R.C.M. 1947, states in pertinent part:

"* * * The retirement allowance payable to a member who has become disabled shall commence on the day following the member's last day of membership service." (Emphasis added.)

Stowe claims this statute deprives the PERS board of any discretion. The board argues this statute does not apply to a disabled person who has been reinstated after previously terminating his membership in the PERS under section 68-1603.

The PERS board argues there are no statutory provisions which specifically allow a disabled person to be reinstated to membership under PERS, without simultaneously being readmitted to the work force as an employee. Since Stowe was not readmitted to the work force, but only to membership in PERS, it argues the PERS board accordingly has broad discretion as to when his benefits are to commence. The board relies on two statutes, section 68-1601(2) and section 68-1803(1), R.C.M. 1947.

Section 68-1601(2), refers to re-entering employment and provides in pertinent part:

"Every employee who re-enters service shall become a member unless he has had an original election of exemption from membership and his service was not interrupted by a break of more than one (1) month. * * *" (Emphasis added.)

Section 68-1803(1) covers the authority of PERS and provides in pertinent part:

"The board of administration may establish such rules and regulations as it deems sroper for the administration and operation of the retirement system and enforcement of this act, subject to its limitation. The board shall determine who are employees within the meaning of this act. The board shall be the sole authority under this act as to the conditions under which persons may become members and receive benefits under the retirement system. The board shall determine and may modify allowances for service and disability under this act. * * *"

From these statutes the PERS board argues that since section 68-1601(2) is the only specific reference in the act to reinstatement of any person, that it necessarily follows that section 68-2102 applies only to reinstated members who have re-entered service as employees. Further, since Stowe did not re-enter as an employee, but as a disabled person, the PERS board then is free to exercise its discretion in determining when to commence his disability retirement allowance. We do not agree.

Even assuming that under section 68-1803(1) the PERS board may determine in its discretion whether or not to reinstate disabled persons, it does not necessarily follow that it may also determine when to commence disability retirement allowances. The two acts are distinct. The act of allowing a disabled person back into the PERS perhaps may be discretionary but the time when the disability retirement allowance starts to run arises by operation of statute.

The PERS board falsely concludes that section 68-2102 applies only to reinstated members who have re-entered service as employees. Section 68-2102 does not distinguish between members who have been reinstated pursuant to section 68-1601, and members who have been reinstated in the board's discretion under section 68-1803(1). It refers only to "a member who has become disabled". Further, section 68-1906, R.C.M. 1947, provides in part:

"Except as otherwise provided in this section, any person who again becomes a member subsequent to the refund of his accumulated normal contributions after a termination of previous membership is considered a new member without credit for any previous membership service, and he may reinstate that membership service by redepositing the sum of the accumulated normal contributions which were refunded to him at the last termination of his membership plus the interest which would have been credited to his account had the refund not taken place. If he makes this redeposit, his membership shall be the same as if unbroken by such last termination. * * *" (Emphasis added.)

Reading the statutes together it is clear the words in section 68-2102 encompass all members, including disabled persons who have been reinstated. This is consistent with the legislative intent as expressed in section 68-1501, R.C.M. 1947, to provide a means of providing replacements for incapacitated employees in the public service without hardship or prejudice to the incapacitated employee. Section 68-2102 leaves no room for the exercise of discretion. Stowe is entitled to a disability retirement allowance commencing on the day following his last day of membership service.

We note this situation would never have occurred if Stowe had been fully informed of his options at the time of his accident. He could then have made a knowing election. Instead, he was handed an application for a return without notice of his right to apply for a disability retirement allowance, thereby greasing the wheels for his loss of rights under PERS. Such practice works a complete frustration of the legislative will and serves only to undermine confidence in the administrative process.

The PERS board also argues that Stowe lost any right to his claim by not appealing to the district court within the statutory 30 days provided in the MAPA, section 82-4216(2), R.C.M. 1947.

There is no question that Stowe did not file an action within the statutory time limits, but under the circumstances here, we hold the PERS board is estopped from claiming Stowe had a duty to use MAPA as his sole remedy. To hold otherwise would be to hold Stowe to his remedy under MAPA, under circumstances where the PERS board at no time indicated it was bound by and acting pursuant to the MAPA. Such a holding would be manifestly unfair.

When Stowe first applied for disability benefits starting on the day of his injury, he asked for a hearing should the PERS board have any questions concerning his position. When Stowe filed his petition along with supporting affidavits and papers, he again asked for a hearing should there be any questions. The PERS board did not reply to either request and proceeded to a determination of his rights without a hearing.

Notice and hearing are specifically provided for under section 82-4209, R.C.M.1947. It states in relevant part:

"(1) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.

"(2) The notice shall include:

"(a) A statement of the time, place and nature of hearing.

"(b) A statement of the legal authority and jurisdiction under which the hearing is to be held.

"(c) A reference to the particular sections of the statutes and rules involved.

"(d) A short and plain statement of the matters asserted. * * *

"(3) Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved.

"* * *."

This statute also contains detailed requirements for the record in a contested case and provides for a stenographic record of the proceedings. The PERS board did not even attempt to comply with this statute.

While the proceedings in this case were at best informal, the PERS board argues this was a contested proceeding within the meaning of section 82-4216 which provides for judicial review of a "final decision". It next argues the letter of May 27, 1975 informing Stowe of its decision, should be treated for purposes of the MAPA as a "final decision". While there is little doubt that it was a final decision as far as the PERS board was concerned, it did not comply with the requirements of section 82-4213, R.C.M. 1947, as to the contents of a final order. That section provides in pertinent part:

> "(1) A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. * * * Parties shall be notified either personally or by mail of any decision or order. Upon request, a copy of the decision or order shall be delivered or mailed forthwith to each party and to his attorney of record."

The letter, purporting to be the final order or decision, contained no findings of fact, just the final conclusion that the PERS board had ruled against Stowe.

It is inconceivable under these circumstances that the PERS board would seek to hold Stowe to his remedy under the Montana Administrative Procedures Act while there was not even token compliance by the PERS board.

It is clear a writ of mandate was a proper remedy in this case since the PERS board, once it agreed to reinstate Stowe as a member of PERS was required by statute to start his retirement disability from the date of the injury. Furthermore, the PERS board was estopped to claim Stowe's sole remedy was under the MAPA and that this remedy was not timely exercised.

The judgment of the district court is reversed. Stowe is entitled to disability retirement benefits from the date of injury. Attorney fees in the amount of $900.00 are awarded on this appeal. The cause is remanded to the district court to fix and assess attorney fees for proceedings had in district court.

_____
Justice.

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.