No. 14741

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

BRADCO SUPPLY COMPANY,

Plaintiff and Appellant,

-vs-

SANDRA LARSEN,

Defendant and Respondent.

---

Appeal from: District Court of the Twelfth Judicial District,
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Sias, Ranstrom and Graham, Chinook, Montana

For Respondent:

Fredrick F. Sherwood, Helena, Montana

---

Submitted on briefs:June 29, 1979

Decided:AUG - 9 1979

Filed: AUG - 9 1979

*Thomas J. Kearney*
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Appellant Bradco Supply Company (Bradco) appeals from an order of the Hill County District Court dismissing its petition for judicial review.

On April 7, 1976, respondent Sandra Larsen filed a complaint with the Human Rights Commission (Commission) alleging sex discrimination against Bradco for failing to hire her on March 15, 1976. On January 21, 1977, she filed an amended complaint alleging sex discrimination as the reason she was not hired by Bradco on March 15, 1976, or June 16, 1976, or August 24, 1976. The Human Rights Division, the investigative staff of the Commission, investigated the case and found reasonable cause to believe that Bradco had in fact discriminated against Ms. Larsen. This finding was issued April 22, 1977. All efforts at conciliation failed and the case was certified for hearing on November 10, 1977. The matter was heard by the Human Rights Division on January 19, 1978.

On June 29, 1978, the Commission issued its findings of fact, conclusions of law, and order. The findings of fact assert that Ms. Larsen had been refused employment because she was a woman and that she suffered economic harm to the extent of $20,550 between March 15, 1976, and January 19, 1978. The conclusions of law stated that Bradco's actions violated section 49-2-303(1)(a), MCA, which makes sex discrimination unlawful in employment where the reasonable demands of a position do not require a sex distinction. The conclusions of law also asserted that Bradco would bear the burden of showing any amounts which should be deducted from the back pay award. The order directed Bradco to pay to Ms. Larsen $18,000 plus 6% interest less deductions for income earned by Ms. Larsen during the time in question.

On July 27 Bradco requested a rehearing on this matter

- 2 -

from the Commission. On September 15 the Commission issued an order which denied Bradco's request for a rehearing. The reason given for the denial was that the rules of the Commission did not provide for a rehearing. On October 13 Bradco petitioned the Hill County District Court for judicial review of the final order of the Commission. On November 1 the Human Rights Division filed a motion to dismiss. The parties submitted briefs on this matter. On December 7, 1978, the District Court granted the motion to dismiss. From this order, Bradco appeals.

The sole issue is whether the District Court erred in denying judicial review of an administrative decision under section 2-4-702(2)(a), MCA. This statute provides, in part, that the petition for judicial review must be filed within 30 days of the agency's final decision or, if a rehearing is requested, within 30 days after the decision thereon.

Montana's Administrative Procedures Act (MAPA) is found in section 2-4-101, et seq., MCA. Section 2-4-305(6), MCA, states, "No rule is valid unless adopted in substantial compliance with 2-4-302 and subsection (1) of this section or 2-4-303 and within 6 months of the publishing of notice thereof." Section 2-4-302, MCA, outlines the procedures an agency must follow in adopting a new rule. This includes a written notice, an opportunity for hearing and the chance to offer views or arguments orally or in writing. Section 2-4-303, MCA, provides for procedures whereby an agency may adopt emergency rules.

Section 2-4-301, MCA, provides that, " . . . nothing in this chapter [MAPA] confers authority upon or augments the authority of any state agency to adopt, administer, or enforce any rule." In other words, the MAPA alone does not confer authority to adopt rules. The MAPA merely outlines the correct procedure an agency must use once the agency has been granted statutory power to adopt rules. In this connection, one must look at the statute

creating the Commission, section 49-2-201, et seq., MCA. Section 49-2-204, MCA, provides in part that " . . . Rulemaking procedures shall comply with the requirements of the Montana Administrative Procedures Act."

The regulations which the Commission has adopted do not provide for a rehearing of a Commission decision. M.A.C. §24-3.9(1) - 0900, et seq. It is conceded by both parties that the Commission did not follow the MAPA procedures in adopting any rule concerning rehearings.

Section 2-4-702(2)(a), MCA, provides: "Proceedings for [judicial] review shall be instituted by filing a petition in district court within 30 days after service of the final decision of the agency or, if a rehearing is requested, within 30 days after the decision thereon." (Emphasis added.)

This Court must now decide whether the 30 day period began to run on June 29, 1978, when the Commission issued its final order or whether it began to run on September 15, 1978, when the Commission denied the requested rehearing. To this end we note the case of Burlington Northern, Inc. v. Public Service Commission of Montana, in the District Court of Lewis and Clark County.

In Burlington Northern, the District Court considered the model rules which have been proposed by the Attorney General for the hearings of and disposition of contested agency cases. M.A.C. §1-1.6(1)-0600, et seq. Under a fact situation similar to the instant case, the District Court held that the agency had absolutely no power to grant a hearing under its enabling statute or its regulations "[t]herefore . . . if judicial review was to be sought, it must have been sought within thirty (30) days after the service date of the final decision of the Public Service Commission . . ." Burlington Northern at p. 8.

Under M.A.C. §24-3.9(2)-P9116, the Commission has also adopted the model rules which were the subject of the Burlington

- 4 -

Northern case.  Because the Commission has no authority to grant a rehearing, the request for such a rehearing is an act of no significance and the date which begins the running of the 30 days within which an aggrieved party must seek judicial review is the date of the agency's final order.

Since there was no possibility of a rehearing the Commission lost jurisdiction over the case as soon as its final order was made effective on June 29, 1978.  Even if the Commission had granted a rehearing, it would not have been legally binding under the MAPA.  Therefore, the provisions of section 2-4-702(2)(a), MCA, concerning a requested rehearing do not apply as a date for measuring the 30 day period.  In Burlington Northern the matter was stated in this language:

> "  .  .  .  Section 82-4216(2), R.C.M. 1947 [now section 2-4-702(2)(a), MCA] was passed before the state administrative agencies had adopted and published the rules of procedures the individual agencies would follow.  The language found in the statute and relied upon by the respondent and intervenor merely anticipates that some administrative agencies would adopt rehearing procedures and establishes a method for judicial review in instances where an agency has a rehearing procedure as well as in instances where no rehearing procedure has been adopted by an agency.  Section 82-4216, R.C.M. 1947 [now section 2-4-702(2)(a), MCA] does not grant any substantive right to a rehearing.  Before the language relied upon by respondent and intervenor has effect, the administrative agency must first adopt a procedural rule allowing for a rehearing.  In this case, no such rule allowing for a rehearing was adopted by the Public Service Commission.  The Public Service Commission's jurisdiction ended when its Order No. 4148 was entered and it had no authority to grant a request for a rehearing.  Therefore, in the present case, if judicial review was to be sought, it must have been sought within thirty (30) days after the service date of the final decision of the Public Service Commission, or within thirty (30) days after December 30, 1974.

> "There is one further reason which compels this Court to conclude that the Public Service Commission does not have jurisdiction and did not retain inherent powers to provide for a rehearing.  Were the Court to enter an order supporting that conclusion, confusion would follow, unless the Court also decided that the time frame within which a

rehearing could be requested, the manner in which a rehearing was to be requested, the reasons for which a rehearing could be requested and the length of time an administrative agency had to act upon the request and to act upon the hearing itself. Such an order would be a judicial substitution for a rule making-procedure which the Montana legislature has reserved for the administrative agency itself." Burlington Northern, at pages 8-9.

While a District Court opinion is certainly not controlling so far as this Court is concerned, the Burlington Northern case is a rational discussion of an identical problem. The final paragraph of the above quote is also a sound policy for this decision. If section 2-4-702(2)(a), MCA, may be triggered by a request for a rehearing where the agency has no rule providing for a rehearing there would be nothing to prevent a losing party in an agency decision from requesting a rehearing several months after what appeared to be an agency's final order.

This Court is only called upon to decide whether or not the District Court had jurisdiction to consider Bradco's petition. It is not this Court's duty to consider the legal merits of that petition. Because the petition for judicial review was not filed within the statutory 30 day period, we hold that the District Court had no jurisdiction to hear the case.

Bradco cites the case of State ex rel. Stowe v. Board of Administration (1977), ____Mont.____, 564 P.2d 167, 34 St.Rep. 349, for the proposition that a petitioner may not be held to a strict 30 day period where an agency has failed to comply with what is now section 2-4-623, MCA. It must be pointed out, however, that in Stowe, the relator was informed by a letter of an adverse decision. He was not even given an agency hearing. The letter did not contain findings of fact, but merely a final conclusion. This Court held that, "It is inconceivable under these circumstances that the PERS board would seek to hold Stowe to his remedy under the Montana Administrative Procedures Act while there was not even token compliance by the PERS board." (Emphasis added.) Stowe,

_____Mont. at _____, 564 P.2d at 171, 34 St.Rep. at 354.

There may be some circumstances where <u>Stowe</u> might provide relief for a petitioner who filed for judicial relief after 30 days of a purported "final decision", but this is not that case. The <u>Stowe</u> decision was limited to a set of circumstances wherein the agency did not even show a "token compliance" with the MAPA. In the instant case, the appellant was given the hearing as required by the MAPA and the final decision substantially complied with section 2-4-623, MCA.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices